**E-FILED**
Tuesday, 09 August, 2016  02:05:12 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBBIE DEROLF and KEVIN ANDERSON *on behalf of themselves and those similarly situated,* | INDIVIDUAL AND COLLECTIVE ACTION FOR UNPAID MINIMUM WAGES UNDER FLSA |
| Plaintiffs, | |
| v. | CLASS ACTION UNDER TRUTH IN LEASING ACT, ILLINOIS WAGE PAYMENT AND COLLECTION ACT, ILLINOIS PAYDAY LOAN REFORM ACT, ILLINOIS WAGE ASSIGNMENT ACT; CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, INTERNAL REVENUE CODE, BREACH OF CONTRACT |
| RISINGER BROS. TRANSFER, INC., 225 W Courtland St. Morton, IL 61550 | |
| and | |
| STANLEY K. RISINGER C/O RISINGER BROS. TRANSFER, INC., 225 W Courtland St. Morton, IL 61550 | <u>JURY TRIAL DEMANDED</u> No. |
| and | |
| DEAN HOFFMAN C/O RISINGER BROS. TRANSFER, INC., 225 W Courtland St. Morton, IL 61550 | |
| and | |
| JOHN DOES 1-10 | |
| Defendants. | |

## <u>INDIVIDUAL, COLLECTIVE, AND CLASS ACTION CIVIL COMPLAINT</u>

Named Plaintiffs Debbie Derolf and Kevin Anderson (hereinafter "Named Plaintiffs"), individually and on behalf of themselves and those similarly situated, by and through undersigned counsel, hereby complain as follows against Defendants Risinger Bros. Transfer,

Inc. ("Defendant Risinger"), Stanley K. Risinger, Dean Hoffman ("Defendant Hoffman") and John Does 1-10 (hereinafter collectively referred to as "Defendants").

## INTRODUCTION

1.      Named Plaintiffs have initiated the instant action to redress Defendants' violations of the Fair Labor Standards Act ("FLSA").  Named Plaintiffs assert that Defendants erroneously designated Named Plaintiffs and those similarly situated as independent contractors and unlawfully deducted from and withheld portions of the wages owed to Named Plaintiffs and those similarly situated.  Specifically, Defendants required Named Plaintiffs and those similarly situated to cover the costs of Defendants' business, intentionally reducing the wages of Named Plaintiffs and those similarly situated below the minimum wage.

2.      Named Plaintiffs have initiated the instant action to redress Defendant Risinger's violations of the Truth in Leasing Act, 49 U.S.C. §14704. Named Plaintiffs assert that Defendant Risinger entered into leases with Named Plaintiffs and those similarly situated that violated the provisions of the Truth in Leasing Act.

3.      Named Plaintiffs have initiated the instant action to redress Defendant Risinger's violations of the Internal Revenue Code, 26 U.S.C. § 7434.  Named Plaintiffs assert that Defendant Risinger purposefully misclassified Named Plaintiffs and those similarly situated as independent contractors and willfully filed fraudulent information returns with respect to payments purported to be made to Named Plaintiffs and those similarly situated.

4.      Named Plaintiffs have initiated this action to redress violations of Defendants of the Illinois Wage Payment and Collection Act, 829 Ill. Comp. Stat. §115/1, *et seq.*  Named Plaintiffs assert that Defendants erroneously designated Named Plaintiffs and those similarly situated as independent contractors and unlawfully deducted from and withheld portions of wages of Named Plaintiffs and those similarly situated.  Specifically, Defendants deducted from

the pay of Named Plaintiffs and those similarly situated amounts that were not authorized by law.

5.      Named Plaintiffs have initiated this action to redress violations of Defendant Risinger of the Illinois Payday Loan Reform Act, 815 Ill. Comp. Stat. §122/1, *et seq.* Named Plaintiffs assert that Defendant Risinger made payday loans which contained illegal terms, failed to make required disclosures, and provided unlawful wage assignments to Defendant Risinger. Named Plaintiffs further assert that, upon information and belief, Defendant Risinger issued payday loans to Named Plaintiffs and those similarly situated without a license to do so.

6.      Named Plaintiffs have initiated this action to redress violations of Defendant Risinger of the Illinois Consumer Fraud and Deceptive Practices Act. 815 Ill. Comp. Stat. §505/1, *et seq.* Named Plaintiffs assert that Defendant Risinger materially misrepresented its independent contractor program to induce Named Plaintiffs and others to enter into vehicle leases and service agreements with Defendant Risinger. Named Plaintiffs further assert that Defendant Risinger's violations of the Illinois Payday Loan Reform Act constitute violations of the Illinois Consumer Fraud and Deceptive Practices Act.

7.      Named Plaintiffs have initiated this action to redress violations of Defendant Risinger of the Illinois Wage Assignment Act, 740 Ill. Comp. Stat. §170/.01, *et seq.* Named Plaintiffs assert that Defendant Risinger unlawfully assigned the wages of Named Plaintiffs and those similarly situated to them to Defendant Risinger's benefit and regularly withheld, on account of such assignments, more than 15% of the gross amount paid for the week.

8.      Named Plaintiffs have initiated this action to redress violations of Defendant Risinger of the Illinois common law for breach of contract on behalf of themselves and all those similarly situated.

## JURISDICTION AND VENUE

9.      The foregoing paragraphs are incorporated herein as if set forth in their entirety.

10.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, the FLSA, 29 U.S.C. § 201 *et seq.,* the Truth in Leasing Act., 49 U.S.C. §14704, *et seq.* and the Internal Revenue Code, 26 U.S.C. § 7434.   This Court has supplemental jurisdiction over Named Plaintiffs' state law claims because those claims arise out of the same nucleus of operative fact as the federal claims.

11.     This Court may properly maintain personal jurisdiction over Defendants, because Defendants' contacts with this state and this jurisdictional district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

12.     Venue is properly laid in this judicial district pursuant to 29 U.S.C. § § 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

13.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

14.     Named Plaintiff Debbie Derolf is an adult individual residing at 523 Turtle Bay Drive, Syracuse, IN 46567.

15.     Named Plaintiff Kevin Anderson is an adult individual residing at 1230 1-B Farmcrest Circle, Mishawaka, IN 46544.

16.     Defendant Risinger is a truckload carrier operating throughout the United States. Defendant Risinger is a corporation with its principal place of business as set forth in the caption.

17.     Defendant Stanley K. Risinger is the Chairman of the Board of Directors of Defendant Risinger.  As the Chairman of the Board of Defendant Risinger, Defendant Stanley K. Risinger was and is an officer of Defendant Risinger and had control and discretion over the manner in which Named Plaintiffs and all similarly situated individuals were paid and classified at Defendant Risinger.

18.     Defendant Dean Hoffman is the President of Defendant Risinger.  As President of Defendant Risinger, Defendant Dean Hoffman was and is an officer of Defendant Risinger and had control and discretion over the manner in which Named Plaintiffs and all similarly situated individuals were paid and classified at Defendant Risinger.

19.     Defendants John Doe 1 through John Doe 5 are presently unknown persons who directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices of Defendants, which resulted in Defendants failing to pay Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs proper compensation pursuant to the FLSA and the Illinois Wage Payment and Collection Act.

20.     Defendants John Doe 6 through John Doe 10 are presently unknown persons who had control over processing payroll regarding Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs.

21.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## **FLSA COLLECTIVE ACTION ALLEGATION**

22.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

23.     Named Plaintiffs bring this action for violations of the FLSA as an individual action and as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who performed work as truck drivers and who were designated as "independent contractors" by Defendants at any point during the three years preceding the date the instant action was initiated (the members of this putative class are hereinafter collectively referred to as "Collective Plaintiffs").

24.     Named Plaintiffs and Collective Plaintiffs are similarly situated, have substantially similar job duties, have substantially similar pay provisions, and were all subject to Defendants' unlawful policies and practices as described herein.

25.     There are numerous similarly situated current and former employees of Defendants who were compensated in violation of the FLSA and who would benefit from the issuance of a Court Supervised Notice of the instant lawsuit and the opportunity to join the present lawsuit.

26.     Similarly situated employees are known to Defendants, are readily identifiable by Defendants, and can be located through Defendants' records.

27.     Therefore, Named Plaintiffs should be permitted to bring this action as a collective action for and on behalf of themselves and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

## **CLASS ACTION ALLEGATIONS**

28.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

29.     Named Plaintiffs bring this action for violations of the Truth in Leasing Act, the Internal Revenue Code, the Illinois Wage Payment and Collection Act, the Illinois Consumer Fraud and Deceptive Practices Act, and Illinois common law as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who performed work as truck drivers or in similar positions who were designated as "independent contractors" by Defendants and who worked in this capacity at any point during the applicable statute of limitations (the members of this putative class are hereinafter collectively referred to as "Class Plaintiffs").

30.     Named Plaintiffs bring this action for violations of the Illinois Payday Loan Reform Act and the Illinois Wage Assignment Act, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who were provided payday advances by Defendants during the applicable statutory period (the members of this putative class are hereinafter collectively referred to as "Payday Loan Plaintiffs").

31.     The class is so numerous that the joinder of all class members is impracticable. Named Plaintiffs do not know the exact size of the class, as such information is in the exclusive control of Defendants; however, on information and belief, the number of potential class members is in the hundreds.

32.     Named Plaintiffs' Truth in Leasing Act claims are typical of the claims of Class Plaintiffs because Named Plaintiffs, like all Class Plaintiffs, signed substantively similar lease agreements which contained terms and conditions which are unlawful pursuant to the Truth in Leasing Act.

33.     Named Plaintiffs' Internal Revenue Code claims are typical of the claims of Class Plaintiffs because Named Plaintiffs, like all Class Plaintiffs, were purposefully misclassified as

independent contractors and Defendants willfully filed fraudulent information returns with respect to payments purported to be made to Named Plaintiffs and Class Plaintiffs.

34.    Named Plaintiffs' Illinois Wage Payment and Collection Act claims are typical of the claims of Class Plaintiffs, because Named Plaintiffs, like all Class Plaintiffs, performed work under the control and direction of Defendants, and were misclassified as independent contractors pursuant to an agreement, which explicitly states that Illinois law is to be applied.  Furthermore, Defendants uniformly and unlawfully deducted from the pay of Named Plaintiffs and Class Plaintiffs expenses necessarily incurred in carrying out Defendant's business.

35.    Named Plaintiffs' Consumer Fraud and Deceptive Business Practices Act claims are typical of the claims of Class Plaintiffs because Defendant Risinger made misleading and false statements in its recruiting and advertising for its independent contractor program to induce Named Plaintiffs and Class Plaintiffs to enter into lease and service agreements with Defendant Risinger.

36.    Named Plaintiffs' claims under the Illinois Payday Loan Reform Act and the Illinois Wage Assignment Act are typical of the claims of Payday Loan Plaintiffs because Defendant Risinger entered into unlawful payday loans with Named Plaintiffs and Class Plaintiffs and unlawfully assigned itself the rights to the earnings and withheld earnings of Named Plaintiffs and Class Plaintiffs in violation of the Illinois Payday Loan Reform Act and the Illinois Wage Assignment Act.

37.    Named Plaintiffs' common law claims for breach of contract are typical of the claims of Class Plaintiffs because Defendant Risinger uniformly breached its obligations under the service contracts to pay Named Plaintiffs and Class Plaintiffs for all miles, loaded and unloaded, per the Rand McNally computerized mileage guide.

38.     Named Plaintiffs will fairly and adequately protect the interests of the Class Plaintiffs, because Named Plaintiffs' interests are coincident with and not antagonistic to those of the class.  Named Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

39.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.  The class will be easily identifiable from Defendants' records.

40.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously.  Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants.  Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendants.

41.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.  Among the questions of law and fact that are common to the class are whether Defendants misclassified Named Plaintiffs and Class Plaintiffs as independent contractors, whether Defendants unlawfully deducted from Named Plaintiffs' and Class Plaintiffs' wages, whether Defendants made material misrepresentations regarding its independent contractor program, and whether Defendants unlawfully entered into payday loans and unlawful withheld earnings from class members.

## FACTUAL BACKGROUND

42.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

43.     Named Plaintiff Debbie Derolf worked for Defendants as a commercial truck driver from in or around May of 2015 until in or around April of 2016.

44.     Named Plaintiff Kevin Anderson worked for Defendants as a commercial truck driver from in or around September of 2015 until in or around January of 2016.

45.     Collective and Class Plaintiffs worked/work for Defendants as commercial truck drivers during the relevant time periods.

46.     At all times relevant, Defendants unlawfully designated Named Plaintiffs, Collective Plaintiffs, and Class Plaintiffs as independent contractors.

### Named Plaintiff and Class Plaintiffs
### Were "Employees" under Federal and State Law

47.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

48.     Defendants provided to Named Plaintiffs an "independent contractor" agreement, which purports to classify Named Plaintiffs as independent contractors.

49.     Defendants provided to Collective and Class Plaintiffs "independent contractor" agreements, which purport to classify Collective and Class Plaintiffs as independent contractors.

50.     The Agreements provided to Named Plaintiffs and Collective and Class Plaintiffs are similar and/or identical in all material terms.

51.     Defendants are a motor carrier as defined by the Motor Carrier Act.

52.     Defendants' primary business is to provide transportation of cargo for hire.

53.     Defendants controlled and directed Named Plaintiffs in the performance of their work.

54.     Defendants controlled/control and directed/direct Collective and Class Plaintiffs in the performance of their work.

55.     Upon Named Plaintiffs' hiring, Defendants required Named Plaintiffs to attend an orientation, which lasted several days.

56.     During orientation, Defendants required Named Plaintiffs to watch presentations and videos regarding the rules and policies of Defendant Risinger, take a drug test, undergo a medical physical, and take a road test.

57.     Upon completing orientation, Defendant Risinger required Named Plaintiffs to sign a lease agreement and service agreement with Defendant Risinger.

58.     Upon Collective and Class Plaintiffs' hiring, Defendants required Collective and Class Plaintiffs to attend orientation, which lasted several days.

59.     During orientation, Defendants required Collective and Class Plaintiffs to watch presentations and videos regarding the rules and policies of Defendant Risinger, take a drug test, undergo a medical physical, and take a road test.

60.     Upon completing orientation, Defendant Risinger required Collective and Class Plaintiffs to sign a lease agreement and service agreement with Defendant Risinger.

61.     Named Plaintiffs were not permitted, by their contracts with Defendant Risinger, to use the commercial vehicles leased to them by Defendant Risinger, for any carrier other than Defendant Risinger unless Defendant Risinger gave prior written consent.

62.     Collective and Class Plaintiffs were/are not permitted, by their contracts with Defendant Risinger, to use the commercial vehicles leased to them by Defendant Risinger for any carrier other than Defendant Risinger unless Defendant Risinger gave/gives prior written consent.

63.     Absent written permission from Defendant Risinger, Named Plaintiffs could accept only jobs that were assigned to them by Defendant Risinger from the Risinger freight system.

64.     Absent written permission from Defendant Risinger, Collective and Class Plaintiffs could/can accept only jobs that were/are assigned to them by Defendant Risinger from the Risinger freight system.

65.     In the event that Named Plaintiffs stopped hauling the majority of their freight for Defendant Risinger, Defendant Risinger required Named Plaintiffs to pay Defendant Risinger a lump sum of $24,000 within seven days of a written demand and notification from Defendant Risinger.

66.     In the event that Collective and Class Plaintiffs stop/stopped hauling the majority of their freight for Defendant Risinger, Defendant Risinger requires/required Collective and Class Plaintiffs to pay Defendant Risinger a lump sum of $24,000 within seven days of a written demand and notification from Defendant Risinger.

67.     Named Plaintiffs had no meaningful opportunity to increase their revenue by recruiting new customers, as they were not permitted to recruit new customers as a consequence of being permitted to accept only loads assigned to them from Defendants.

68.     Collective and Class Plaintiffs had/have no meaningful opportunity to increase their revenue by recruiting new customers, as they were/are not permitted to recruit new customers as a consequence of being permitted to accept only loads assigned to them from Defendants.

69.     Named Plaintiffs were paid a flat cents-per-mile rate, which was not subject to negotiation based on the individual loads assigned to Named Plaintiffs.

70.     Additionally, Defendants retained the right to unilaterally change Named Plaintiffs', Collective Plaintiffs', and Class Plaintiffs' compensation structure by changing the fuel surcharge, the amount of the non-refundable maintenance escrow deductions, and the amount of the base compensation.

71.     Named Plaintiffs could do little to increase their profitability other than attempt to improve their fuel efficiency.

72.     Class Plaintiffs could/can do little to increase their profitability other than attempt to improve their fuel efficiency.

73.     Defendants assigned Named Plaintiffs "driver managers," who acted as Named Plaintiffs' supervisors throughout their employment with Defendants.

74.     Defendants assigned Collective and Class Plaintiffs "driver managers," who acted/act as their supervisors throughout their employment with Defendants.

75.     Named Plaintiffs were economically dependent upon Defendants.

76.     Collective and Class Plaintiffs were/are economically dependent upon Defendants.

77.     At all times, Defendants directed, provided, and supervised the work performed by Named Plaintiffs on Defendants' behalf.

78.     At all times, Defendants directed, provided, and supervised the work performed by Collective and Class Plaintiffs on Defendants' behalf.

**Defendants' Unlawful Wage Deduction Policy**
**(Named Plaintiff and Class Plaintiffs v. Defendants)**

79.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

80.     Defendants paid Named Plaintiffs and Class Plaintiffs.

81.     Upon information and belief, Defendants process paychecks issued to Named Plaintiffs and Class Plaintiffs in Illinois.

82.     Defendants are an "employer" in Illinois under the statutory definition of the Illinois Wage Payment and Collection Act.

83.     Named Plaintiffs and Class Plaintiffs were "employees" under the statutory definition of the Illinois Wage Payment and Collection Act because they were not free from control and direction over the performance of their work.

84.     Named Plaintiffs and Class Plaintiffs were "employees" under the statutory definition of the Illinois Wage Payment and Collection Act because they performed work as commercial truck drivers for a motor carrier whose primary business is to provide commercial truck driving services to its customers.

85.     Named Plaintiffs and Class Plaintiffs were "employees" under the statutory definition of the Illinois Wage Payment and Collection Act because they did not perform work for an independently established trade, occupation, profession, or business.

86.     During Named Plaintiffs' employment, Defendants made deductions from Named Plaintiffs' paychecks, including deductions for lease payments, fuel, insurance, maintenance, fuel taxes, advances, and other miscellaneous fees ("Wage Deduction Policy").

87.     During Collective and Class Plaintiffs' employment, Defendants made unlawful deductions from Collective Plaintiffs' and Class Plaintiffs' paychecks, including but not limited to deductions for lease payments, fuel, insurance, maintenance, fuel taxes, advances, and other miscellaneous fees ("Wage Deduction Policy").

88.     The deductions made pursuant to Defendants' Wage Deduction Policy were not required by law. 820 Ill.  Comp. Stat. §115/9(1).

89.     The deductions made pursuant to Defendants' Wage Deduction Policy were not for the benefit of the employee. 820 Ill. Comp. Stat. §115/9(2).

90.     The deductions made pursuant to Defendants' Wage Deduction Policy were not made in response to a valid wage assignment or wage deduction order. 820 Ill. Comp. Stat. §115/9(3).

91.     The deductions made pursuant to Defendants' Wage Deduction Policy were not made with the express written consent of the employee that was given freely at the time of the deduction. 820 Ill. Comp. Stat. §115/9(4).

**Failure to Pay Minimum Wage for all Hours Worked**
**(Named Plaintiffs and Collective Plaintiffs v. Defendants)**

92.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

93.     Defendants' Wage Deduction Policy and its pay structure regularly caused Named Plaintiffs' wages to drop below the federal minimum wage of $7.25 per hour for all hours worked during a workweek.

94.     Upon information and belief, Collective Plaintiffs regularly received less than the federal minimum wage of $7.25 per hour for all hours worked during a workweek as a result of Defendant's Wage Deduction Policy and its pay structure.

**Defendants' Violations of the Truth in Leasing Act**
**(Named Plaintiffs and Class Plaintiffs v. Defendant Risinger)**

95.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

96.     To help facilitate the interstate and intrastate delivery of freight, Defendant Risinger entered into substantively similar and/or identical lease agreements with Named Plaintiffs and Class Plaintiffs which Defendant Risinger titled "Independent Contractor Operating Agreement[s]." (hereinafter the "Agreements").

97.     These Agreements purport to lease, on behalf of Defendant Risinger, commercial trucks and driving services from Named Plaintiffs and Class Plaintiffs.

98.     Under federal law and regulations, "authorized motor carriers" such as Defendant Risinger, may perform authorized transportation in equipment that they do not own *only* if the equipment is covered by a written lease meeting the requirements set forth in the federal Truth-in-Leasing Regulations at 49 C.F.R. § 376.12.  *See* 49 C.F.R. § 376.12(a).

99.     The Agreements do not conform to the requirements set forth in 49 C.F.R. § 376.12.

100.    Plaintiff's Agreements do not conform to 49 C.F.R. § 376.12(a) because the Agreements are not signed between the "owner of the equipment" and Defendant.

101.    By way of example only:

   a.   Named Plaintiff Derolf was not an "owner of the equipment," at the time her Agreement was signed, because Named Plaintiff Derolf did not have title to the vehicle, did not have lawful possession of the vehicle, and did not have the right to exclusively use the equipment.  *See* 49 C.F.R. § 376.2.

   b.   Instead, nearly a month after the Agreement was signed, Defendant Risinger had Named Plaintiff Derolf sign a vehicle lease which Defendant Risinger entitled "Independent Contractor – Appendix G – Premier Risinger Tractor Lease/Purchase Agreement Fair Market Value (FMV) Lease." (the "Vehicle Lease").

   c.   Defendant Risinger misrepresented itself on the Vehicle Lease as the title owner of the vehicle to be leased.

d.  Defendant Risinger misrepresented on the Vehicle Lease that it would "maintain title on the truck until the purchase option is exercised…"

e.  Upon information and belief, during the entire term of the Vehicle Lease, Defendant Risinger did not have legal title to the vehicle.

f.  Instead, upon information and belief, title was issued on the vehicle to Penske on May 8, 2015, which predates the Vehicle Lease, and remained in Penske's possession throughout the duration of the Vehicle Lease.

102.  Upon information and belief, Defendant Risinger's Agreements with Class Plaintiffs are similarly deficient.

103.  Additionally, Defendant Risinger's Agreements contain several provisions that violate the Truth-in-Leasing Regulations, as, by way of example only:

a.  Paragraphs 6(a), 6(b)(1), 6(d), 9(c), 10, 13, 15(b)(5)(A), 15(b)(5)(B), 15(b)(5)(B) and 15(b)(5)(C) of the Agreements require Named Plaintiffs and Class Plaintiffs to indemnify Defendant Risinger and hold Named Plaintiffs and Class Plaintiffs responsible for various claims, fees, costs and penalties. These provisions impermissibly seek to limit Defendant Risinger's exclusive possession, control and responsibility concerning the operation of the vehicles, in violation of 49 C.F.R. § 376.12(c)(1) and, in several instances, impermissibly seek to limit Defendant Risinger's legal obligations concerning public liability insurance under 49 C.F.R. § 376.12(j)(1) and 49 U.S.C. § 13906.

b.  Paragraph 16(f)(1) of the Agreements recite Defendant Risinger's right to unilaterally and retroactively change Plaintiffs' compensation in the event that

Plaintiffs are found by a court of law or another government body to be employees of Defendant Risinger rather than independent contractors.  This provision makes Plaintiffs' final compensation subject to change, in violation of Defendant Risinger's obligation to clearly specify in the lease agreement the compensation that is due to Plaintiffs as per 49 C.F.R. § 376.12(d).

c.   Paragraphs 2(a) and 2(b) of Appendix B to the Agreements purport to give Defendant Risinger the right to change Plaintiffs' compensation at any point during the relationship, in violation of Defendant Risinger's obligation to clearly specify in the lease agreement the compensation that is due to Plaintiffs as per 49 C.F.R. § 376.12(d).

d.   Paragraph 1(b)(2) of Appendix B to the Agreements permit Defendant Risinger to unilaterally change the amount of the fuel surcharge payments to be provided to Named Plaintiffs and Class Plaintiffs in violation of Defendant Risinger's obligation to clearly specify in the lease agreement the compensation that is due to Plaintiffs as per 49 C.F.R. § 376.12(d).

e.   Paragraph 5(c) of the Agreements permit Defendant Risinger to change the types of charge(s) it may deduct from Named Plaintiffs' and Class Plaintiffs' pay without entering into an addendum (as defined by 49 C.F.R. § 376.2(i)) to the Agreement, in violation of 49 C.F.R. §376.12(h).

f.   Paragraph 9(a) of the Agreements contain a non-exhaustive list of items that may be paid for by Defendant Risinger then charged back against Plaintiffs' compensation, in violation of Defendant Risinger's obligation to clearly

specify items that may be charged back against Plaintiffs' compensation as per 49 C.F.R. § 376.12(h).

g.  Appendix G to the Agreements require Plaintiffs to pay a preset cents-per-mile rate into a "non-refundable escrow" account for maintenance work.  This requirement to purchase maintenance services from Defendant Risinger is in violation of 49 C.F.R. §376.12(i).

h.  Appendix G to the Agreements state that all maintenance on the equipment must be coordinated by Defendant Risinger and is to be completed at a Penske Corporation facility, constituting a forced purchase of goods and/or services in violation of 49 C.F.R. § 376.12(i).

i.  Paragraph 7(e) of the Agreements state that Defendant Risinger may deduct from Plaintiffs' escrow accounts all amounts that Defendant Risinger spends, incurs, or owes to a third party or all items that Plaintiffs owe to Defendant Risinger or a third party at the time of final settlement, without sufficiently specifying the actual items that may be deducted from the escrow accounts, in violation of Defendant Risinger's obligation to do so under 49 C.F.R. § 376.12(k)(2).

j.  Paragraph 7(e) of the Agreements state that Defendant Risinger may deduct from Plaintiffs' escrow accounts all amounts that Defendant Risinger spends, incurs, or owes to a third party or all items that Plaintiffs owe to Defendant Risinger or a third party at the time of final settlement without sufficiently specifying the actual items that may be deducted from the escrow accounts,

purporting to give Defendant Risinger an unqualified and unrestricted right to withhold escrow monies in violation of 49 C.F.R. § 376.12(k)(6).

k. Appendix G to the Agreements establish a Maintenance Escrow Account on behalf of Plaintiffs and purport to give Defendant Risinger an unrestricted right to change the amount of Plaintiffs' required contribution to the Maintenance Escrow Account, in violation of Defendant Risinger's obligation to clearly state the amount of such contributions on the lease agreement as per 49 C.F.R. § 376.12(k)(2).

l. Appendix G to the Agreements establish a non-refundable Maintenance Escrow Account, purporting to give Defendants an unrestricted and unqualified right to retain escrow monies in violation of C.F.R. § 376.12(k)(6).

104. Furthermore, the Agreements do not contain certain provisions required by the Truth-in-Leasing Regulations; by way of example only:

a. The Agreements do not conform to 49 C.F.R. § 376.12(b) because the Agreements do not specify the time and date or circumstances under which the Agreements end.

b. Paragraph 15(b)(4) of the Agreements describe Defendant Risinger's possession, control and use of the equipment but limit same to times where the equipment is being utilized for Defendant Risinger. This paragraph is not an *unqualified* statement of Defendant Risinger's *exclusive* possession, use and control of the equipment, in violation of Defendant Risinger's obligation to include such a statement in the lease as per 49 C.F.R. § 376.12(c)(1).

c. Paragraph 9(f)(1) of the Agreements state that Defendant Risinger will issue to Plaintiffs a "limited-purpose credit card issued by a third-party financial-services company," (hereinafter "Comdata card"), but does not specify the charges associated with the Comdata card, in violation of Defendant Risinger's obligation to clearly state all items that may be charged back against Plaintiffs' compensation as per 49 C.F.R. § 376.12(h).

d. Paragraph 10 of the Agreements contain a non-exhaustive list of items that may be charged back against Plaintiffs' compensation due to Plaintiffs' purported obligation to indemnify Defendant Risinger for cargo claims. This provision impermissibly fails to specify all items that may be charged back against Plaintiffs' compensation and the method of computation of such items in violation of Defendant Risinger's obligation to state same as per 49 C.F.R. § 376.12(h).

e. Paragraph 11(c) of the Agreements purport to authorize Defendant Risinger to charge back against Plaintiffs' compensation the costs of repairing and restoring Defendant Risinger's vehicle upon return of same but fails to specify the items that may be charged back or the method of computation of same, in violation of Defendant Risinger's obligation to do so as per 49 C.F.R. § 376.12(h).

f. Paragraph 17 of the Agreements purport to authorize Defendant Risinger to charge back against Plaintiffs' compensation the costs of completing performance in the event that Plaintiffs fail to do so. This provision violates

49 C.F.R. § 376.12(h) as it fails to specify the items that may be charged back or the method of computation of same.

g.   The Agreements state that "[Plaintiff] understands that it is [Defendant Risinger's] intent to be transparent on all costs and charges relating to all programs and that in all cases [Defendant Risinger] has attempted to pass on the actual cost of these programs to the [Plaintiff].  In some cases due to timing, renewal terms, and other factors, [Plaintiff] understands that the cost passed on may not reflect the actual cost incurred by [Defendant Risinger]." This provision acknowledges Defendant Risinger's receipt of undisclosed profits related to items that are initially paid for by Defendant Risinger then charged back against Plaintiffs' compensation, in violation of Defendant Risinger's obligation to identify in the lease all such profits as per 49 C.F.R. § 376.12(h).

h.   The chart of Charge-Back or Other Deduction Items located in Appendix A to the Agreements allude to mark-ups that may be charged back against Plaintiffs' compensation for several items, including, but not limited to, Equipment Inspections and Logo Store Clothing and Other Items, but does not specifically state the method of computation of such charges, in violation of Defendant Risinger's obligation to do so as per 49 C.F.R. § 376.12(h).

i.   Appendix G to the Agreement purports to authorize Defendant Risinger to deduct any monies owed to Defendant Risinger from Plaintiffs' compensation upon final settlement, but does not sufficiently specify the items that may be charged back against Plaintiffs' compensation pursuant to this provision, in

violation of Defendant Risinger's obligation to do so as per 49 C.F.R. § 376.12(h).

105.    The conduct and business practices of authorized motor carriers must also comply with the Truth-in-Leasing regulations irrespective of whether or not their written lease agreements satisfy the requirements of the regulations.  *See* 49 C.F.R. § 376.12.

106.    Defendant Risinger's conduct does not conform to the requirements set forth in 49 C.F.R. § 376.12, as, by way of example only, the Agreements state that the fuel surcharge program "shall be discontinued when the National U.S. Department of Energy average diesel fuel price falls below one dollar ninety-nine cents per gallon ($1.99). [Defendant Risinger] shall then re-evaluate whether to resume the program." Consistent with its unilateral ability to change the fuel surcharge compensation at its whim, on February 18, 2016, Defendant Risinger issued a letter to Named Plaintiff Derolf and then currently employed Class Plaintiffs explaining that Defendant Risinger intended to provide a negative fuel surcharge (i.e. a *reduction* in compensation) if the price of diesel fell below $1.99 per gallon.

107.    Moreover, the amount of compensation due under the lease is not clear, and as a consequence, Defendant Risinger frequently underpaid Named Plaintiffs and Class Plaintiffs even per the terms of the Agreement.

108.    For example, the Agreement states that Named Plaintiffs would be paid a flat mileage rate "for all loaded and dispatched empty miles operated under [Defendant Risinger] dispatch (as specifically directed or authorized by [Defendant Risinger] based on [Defendant Risinger's] most current . . . version of Rand McNally computerized mileage guide…"

a.    Rand McNally has a publicly available "Mileage Calculator" available on its website at http://maps.randmcnally.com/mileage_calculator.

b.  On March 25, 2016, Named Plaintiff Derolf was paid for a load she delivered for Defendant Risinger.  The origin for the load was Harvey, IL and the destination was Allen Park, MI.  Defendant Risinger paid Named Plaintiff for 253 miles.  [Exhibit A].  However, Rand McNally computerized mileage calculator shows that the distance is 259.8 miles. [Exhibit B].

c.  On March 25, 2016, Named Plaintiff Derolf was paid for a load she delivered for Defendant Risinger.  The origin for the load was Perrysburg, OH and the destination was Walworth, WI.  Defendant Risinger paid Named Plaintiff Derolf for 299 miles.  [Exhibit A].  However, Rand McNally computerized mileage calculator shows that the distance is 323.7 miles. [Exhibit C].

d.  On March 25, 2016, Named Plaintiff Derolf was paid for a load she delivered for Defendant Risinger.  The origin for the load was Pleasant Prairie, WI and the destination was Breinigsville, PA.  Defendant Risinger paid Named Plaintiff Derolf for 764 miles.  [Exhibit A].  However, Rand McNally computerized mileage calculator shows that the distance is 781.3 miles. [Exhibit D].

e.  On March 25, 2016, Named Plaintiff Derolf was paid for a load she delivered for Defendant Risinger.  The origin for the load was York, PA and the destination was Brattleboro, VT.  Defendant Risinger paid Named Plaintiff Derolf for 363 miles.  [Exhibit A].  However, Rand McNally computerized mileage calculator shows that the distance is 380.6 miles. [Exhibit E].

109.    Thus, the Agreement does not conform to 49 C.F.R. §376.12(d) because the amount to be paid is not clearly stated on the face of the lease or in an addendum to the lease which was provided prior to the commencement of any trip.

110.    The above violations are mere examples of the written lease violating substantial provisions of the Truth in Leasing Act.  Moreover, many of the violations stated herein violate multiple sections of the Truth in Leasing Act even where only one specific section is cited.

### Defendant Risinger's Violations of the Internal Revenue Code
### (Named Plaintiffs and Class Plaintiffs v. Defendant Risinger)

111.    The foregoing paragraphs are incorporated herein as if set forth in full.

112.    By virtue of the Independent Contractor Operating Agreements, Defendant Risinger purposefully misclassifies/misclassified Named Plaintiffs and Class Plaintiffs as independent contractors for tax purposes.

113.    Defendants report/reported Class Plaintiffs' earnings to the federal government by filing form 1099-misc information returns on behalf of each such individual.

114.    Defendants do not withhold *any* state or federal income taxes on behalf of Class Plaintiffs.

115.    Defendants do not have a good faith basis for misclassifying Plaintiffs as independent contractors for tax purposes.

116.    By way of example only:

    a.    Named Plaintiffs and Class Plaintiffs have/had no meaningful opportunity to make a profit as a result of their work for Defendant Risinger as Named Plaintiffs and Class Plaintiffs could improve their profitability only by improving their efficiency (*i.e.* fuel efficiency).

b.   Named Plaintiffs and Class Plaintiffs have/had no meaningful opportunity to work for other firms as Defendant Risinger maintains strict control of Named Plaintiffs and Class Plaintiffs' ability to haul loads for other Carriers and, in fact, rarely, if ever, allowed Named Plaintiffs and Class Plaintiffs to haul loads for other Carriers while requiring fourteen (14) days advance notice for such trips, making the planning of such trips infeasible, if not impossible.

c.   Named Plaintiffs and Class Plaintiffs do/did not offer services to the general public as Named Plaintiffs and Class Plaintiffs are/were able to haul loads only for Defendant Risinger and were able to haul loads for other carriers with Defendants' prior approval only under very limited circumstances.

d.   Defendant Risinger has/had the right to give Named Plaintiffs and Class Plaintiffs instructions about when, where and how to work as Named Plaintiffs and Class Plaintiffs can/could accept only the loads assigned to them by Defendant Risinger or can/could accept loads from other carriers that were pre-approved by Defendants only under very limited circumstances while Named Plaintiffs and Class Plaintiffs were obligated by their agreements to strictly adhere to the specifications of Defendant Risinger's customers when delivering said loads.

e.   Defendant Risinger trained Named Plaintiffs and Class Plaintiffs to do the job in a certain way as Defendant Risinger required Named Plaintiffs and Class Plaintiffs to attend an orientation where Named Plaintiffs and Class Plaintiffs were trained on Defendants' practices and procedures and provided with company materials detailing the practice and procedures that Named Plaintiffs

and Class Plaintiffs would be required to adhere to while working for Defendant Risinger.

f.   Named Plaintiffs and Class Plaintiffs' services are a necessary part of Defendant Risinger's business as Defendant Risinger is in the business of hauling freight in intrastate and interstate commerce and Named Plaintiffs and Class Plaintiffs are contracted to haul said freight on behalf of Defendant Risinger.

g.   Defendant Risinger maintains an absolute contractual right to approve Named Plaintiffs and Class Plaintiffs' assistants for employment and to terminate Named Plaintiffs and Class Plaintiffs' assistants' employment.

h.   Defendant Risinger maintains a continuing relationship with Named Plaintiffs and Class Plaintiffs as Named Plaintiffs and Class Plaintiffs deliver loads for Defendants frequently and, in most cases, are responsible to Defendant Risinger for weekly lease payments or rely on their employment with Defendant Risinger to pay their weekly lease payments.   Additionally, Defendants regularly terminate agreements with Class Plaintiffs due to Class Plaintiffs' failure to accept loads from Defendant Risinger.

i.   Defendant Risinger sets Named Plaintiffs and Class Plaintiffs' work hours because, once a load is assigned to Named Plaintiffs or Class Plaintiffs by Defendant Risinger, Defendant Risinger establishes a strict time frame within which the load must be delivered to the customer.

j.   Named Plaintiffs and Class Plaintiffs work for Defendant Risinger full-time because Named Plaintiffs and Class Plaintiffs can/could accept only the loads

assigned to them by Defendant Risinger or obtained from other companies but pre-approved by Defendant Risinger only under very limited circumstances. Additionally, in the event that Named Plaintiff or Class Plaintiffs stop working primarily for Defendant Risinger, the agreement obligates Named Plaintiffs and Class Plaintiffs to pay Defendant Risinger a $24,000 fee within seven days or be disqualified from employment.

k. Defendant Risinger determines the order in which services are performed, if at all, as Defendant Risinger assigns loads to Named Plaintiffs and Class Plaintiffs, who are not able to choose which loads will be assigned to them by Defendant Risinger or when such loads will be assigned to them by Defendant Risinger, and are under strict time restrictions once assigned a load.

l. Named Plaintiffs and Class Plaintiffs are required to provide Defendant Risinger with reports accounting all work-related actions taken on behalf of Defendant Risinger through the GPS system on the truck, driver logs, trip reports, expense reports and other documents required by Defendant Risinger for every trip taken by Named Plaintiffs and Class Plaintiffs.

m. Defendant Risinger pays Named Plaintiff and Class Plaintiffs weekly and provides Named Plaintiffs and Class Plaintiffs with a weekly settlement statement outlining the compensation paid to them regardless of how many jobs have been completed for Defendant Risinger each week.

n. Defendant Risinger maintains an absolute the right to terminate Named Plaintiffs and Class Plaintiffs' employment for any reason by giving five day's written notice.

o.  Named Plaintiffs and Class Plaintiffs maintain the right to quit their employment with Defendant Risinger for any reason by giving five day's written notice.

117.   Defendant Risinger purposefully misclassifies/misclassified Named Plaintiffs and Class Plaintiffs as independent contractors for the purpose of reducing its costs and increasing its profits by avoiding liability under the Federal Insurance Contributions Act ("FICA").

118.   By way of explanation only:

a.  FICA is a United States federal payroll tax imposed on both employees and employers to fund Social Security and Medicare, federal programs that provide benefits for retirees, the disabled, and children of deceased workers.

b.  Under FICA, in a traditional employment relationship, the employee and the employer pay an equal portion of the Social Security and Medicare taxes.

c.  Where an individual is designated as an independent contractor rather than an employee, that individual is not responsible for paying taxes under FICA, but is instead responsible for contributing to Social Security and Medicare under the Self-Employment Contributions Act of 1954 ("SECA").

d.  The SECA tax paid by the purported independent contractor is equal to the combined contributions required of employers *and* employees under FICA, though it is assessed against slightly less than one hundred percent (100%) of that individual's net earnings from self-employment, such that the tax liability of the purported independent contractor is slightly less than *double* the tax liability of an employee whose compensation equals the net earnings from self-employment of said self-employed individual.

e. Where an individual is designated as an independent contractor, the company with whom that individual contracts is not responsible for paying *any* taxes under FICA *or* SECA, effectively negating a significant portion of the tax liability attendant to the compensation paid the purported independent contractor.

119. Additionally, Defendant Risinger purposefully misclassifies/misclassified Named Plaintiffs and Class Plaintiffs as independent contractors for the purpose of reducing its costs and increasing its profits by avoiding tax liability under the Federal Unemployment Tax Act ("FUTA").

120. FUTA is a United States federal law that imposes a tax on employers that is used to help fund state workforce agencies.

121. Under the independent contractor framework, the FUTA tax is not paid by the independent contractor or the company with whom he or she contracts.

122. Due to Defendant Risinger's purposeful misclassification of Named Plaintiffs and Class Plaintiffs, Defendant Risinger did not pay *any* FICA or FUTA taxes in relation to the compensation paid Named Plaintiffs and Class Plaintiffs.

123. Defendant Risinger purposefully garnered a significant illicit tax break from their willful and fraudulent misclassification of Named Plaintiffs and Class Plaintiffs as independent contractors.

124. Because of Defendant Risinger's fraudulent misclassification of Named Plaintiffs and Class Plaintiffs as independent contractors, Named Plaintiffs and Class Plaintiffs suffered damages, including but not limited to increased tax liability pursuant SECA.

**Defendant Risinger's Violations of the Illinois Payday Loan Reform Act**
**(Named Plaintiffs and Payday Loan Plaintiffs v. Defendant Risinger)**

125.    The foregoing paragraphs are incorporated herein as if set forth in full.

126.    Defendant Risinger provided payday advances to Named Plaintiffs and Payday Loan Plaintiffs in exchange for a service fee which ranged from $5 to more than $50 per loan.

127.    In exchange for the loan, Defendant Risinger accepted an interest in the wages Defendant Risinger was to pay Named Plaintiffs and Payday Loan Plaintiffs.

128.    Defendant Risinger required Named Plaintiffs and Payday Loan Plaintiffs to repay the principal of the loan, as well as the service fee, out of their next paycheck, which typically was within two weeks of the loan being made.

129.    Due to the relatively short duration of such loans, which was generally less than 2 weeks and which did not exceed 120 days, the service fee exceeded 36% annual interest.

130.    Defendant Risinger regularly issued payday loans to Named Plaintiffs and Payday Loan Plaintiffs with a minimum term of less than 13 days.

131.    Defendant Risinger regularly issued payday loans to Named Plaintiffs and Payday Loan Plaintiffs when the borrower had been indebted to Defendant Risinger for more than 45 days.

132.    Defendant Risinger regularly issued payday loans to Named Plaintiffs and Payday Loan Plaintiffs when the borrower had an outstanding balance on 2 or more payday loans.

133.    Defendant Risinger regularly issued payday loans to Named Plaintiffs and Payday Loan Plaintiffs when the total of all payday loans coming due within the first calendar month of the loan, when combined with the payment amount of all the borrower's other outstanding payday loans, exceeded $1,000 and/or 25% of the borrower's gross monthly income.

134.    Defendant Risinger unlawfully secured an interest in Named Plaintiffs' and Payday Loan Plaintiffs' property when issuing payday loans to Named Plaintiffs and Payday

Loan Plaintiffs by requiring that any loan, including the principal and interest, be recovered from Named Plaintiffs' and Payday Loan Plaintiffs' escrow accounts where the borrower did not earn enough compensation during the workweek to pay for the loan.

135.    Upon information and belief, Defendant Risinger failed to comply with any of the verification requirements required by 815 Ill. Comp. Stat. §122-2/15 prior to entering into loan agreements with Named Plaintiffs and Payday Loan Plaintiffs.

136.    Defendant Risinger failed to provide to Named Plaintiffs and Payday Loan Plaintiffs any of the required disclosures as required by 815 Ill. Comp. Stat. §122/2-20 prior to entering into loan agreements with Named Plaintiffs and Payday Loan Plaintiffs.

137.    Defendant Risinger never executed or had Named Plaintiffs or Payday Loan Plaintiffs execute a written loan agreement.

138.    Defendant Risinger failed to provide Named Plaintiffs and Payday Loan Plaintiffs with notice of their rights to request a repayment plan.

139.    In advertising its payday lending to Named Plaintiffs and Payday Loan Plaintiffs, Defendant Risinger failed to disclose the annual percentage rate of interest.

140.    Upon information and belief, during all relevant times herein, Defendant Risinger did not hold a license to issue payday loans.

141.    Defendant Risinger conducted the business of issuing payday loans within the same place of business that Defendant Risinger operated its motor carrier operations, including, *inter alia,* entering into service agreements with alleged contractors, entering into commercial vehicle leases with alleged contractors, and selling insurance to alleged contractors.

142.    Because Defendant Risinger is not licensed to issue payday loans, and because Defendant Risinger materially violated the Illinois Payday Loan Reform Act, all loans issued to

Named Plaintiffs and Payday Loan Plaintiffs are null and void, and Defendant Risinger must return all amount(s) collected on such loans to Named Plaintiffs and Payday Loan Plaintiffs, including all principal, charge(s), and interest.  815 Ill. Stat. §112/4-5(h).

**Defendant Risinger's Violations of the**
**Illinois Consumer Fraud and Deceptive Business Practices Act**
**(Named Plaintiffs and Class Plaintiffs v. Defendant Risinger)**

143.    The foregoing paragraphs are incorporated herein as if set forth in full.

144.    Defendant Risinger materially misrepresented its "independent contractor" program in its advertisements, promotions, written materials, and in verbal communications.

145.    The material misrepresentations made to Named Plaintiffs and Class Plaintiffs were substantively identical.

146.    For example, Defendant Risinger routinely falsely advertised the number of miles it would provide Named Plaintiffs and Class Plaintiffs to induce Named Plaintiffs and Class Plaintiffs to enter into Defendant Risinger's "independent contractor" program.

147.    On Defendant Risinger's website, available at http://joinrisinger.com, Defendant advertises that it will provide "Consistent Miles of 2,700/week."

148.    Yet on a different page of Defendant Risinger's website, available at http://www.risingertrans.com/drivers/perks, Defendant Risinger advertises that "Miles average above 2,800 miles per week for single drivers."

149.    In an audio advertisement available on Defendant Risinger's website, available at http://www.risingertrans.com/drivers/why-us, Defendant Risinger advertises that its drivers "average between 2,700 and 3,200 miles a week."

150.    Once a driver is induced by such advertisements and submits an application to join the "independent contractor" program, the driver is then "invited" to an orientation at Defendant Risinger's headquarters in Illinois.

151.    During the orientation, in written materials provided to Named Plaintiffs and Class Plaintiffs, Defendant Risinger informed Named Plaintiffs and Class Plaintiffs that drivers in its "independent contractor" program will be provided "Consistent miles 2500 + miles per week."

152.    The 200-700 mile difference between what was advertised online and what is advertised in orientation results in a reduction of pay between $216-$756 *per week*.

153.    Nevertheless, Defendant Risinger failed to consistently provide Named Plaintiffs and Class Plaintiffs even 2500+ miles per week.

154.    During the first 12 weeks of 2016, Defendant Risinger only provided Named Plaintiff Derolf, on average, 2,081 miles per week.  Based on Named Plaintiff Derolf's per mile compensation, the difference in pay she received during the first 12 weeks for driving, on average, 2,081 miles per week, versus what she would have earned at the advertised mileage amount, amounts to: $8,170.80 (if Defendant Risinger provided Named Plaintiff Derolf 2,700 miles per week) - $14,770.80 (if Defendant Risinger provided Named Plaintiff Derolf 3,200 miles per week).

155.    Additionally, Defendant Risinger falsely advertised that it would pay Named Plaintiffs and Class Plaintiffs their mileage rate plus a fuel surcharge "ON ALL MILES LOADED & EMPTY." *See* http://www.joinrisinger.com.

156.    Defendant Risinger does not pay Named Plaintiffs or Class Plaintiffs based on "all miles" but rather utilizes an algorithm which is intentionally designed to reduce the total miles paid to Named Plaintiffs and Class Plaintiffs.

157.    Defendant Risinger further does not pay a fuel surcharge based upon all miles driven.

158.    In the Agreements provided to Named Plaintiffs and Class Plaintiffs, Defendant Risinger falsely advertises that it would compute the amount of miles to be driven based upon Defendant Risinger's "most current . . . version of Rand McNally computerized mileage guide…"

159.    As discussed above, however, Defendant Risinger consistently paid for significantly less miles to Named Plaintiffs and Class Plaintiffs than the amount of miles per the Rand McNally computerized calculations.

160.    Additionally, Defendant Risinger's advertised mileage rate is deceptive because Defendant Risinger omits that Named Plaintiffs and Class Plaintiffs will be subject to a non-refundable escrow which reduces the advertised mileage rate by up to 10 cents per mile.

161.    In addition, Defendant Risinger has violated the Illinois Consumer Fraud and Deceptive Practices Act as to Named Plaintiffs and all Payday Loan Plaintiffs as a consequence of its violations of the Illinois Payday Loan Reform Act.

### Defendant Risinger's Violations of the Illinois Wage Assignment Act
### (Named Plaintiffs and Class Plaintiffs v. Defendant Risinger)

162.    The foregoing paragraphs are incorporated herein as if set forth in full.

163.    In providing payday loans to Named Plaintiffs and Payday Loan Plaintiffs, Defendant Risinger assigned itself a right to the Named Plaintiffs' and Payday Loan Plaintiff's future wages.

164.    In addition, Defendant Risinger provided loans to Named Plaintiffs and Class Plaintiffs for the purchase of fuel and other business expenses, and in providing such loans, assigned itself a right to Named Plaintiffs' and Payday Loan Plaintiff's future wages.

165.    In securing the wage assignment, Defendant Risinger failed to secure a written instrument which was signed and dated by the borrower in person.

166.    In securing the wage assignment, Defendant Risinger failed to secure a written instrument containing any of the requirements of 740 Ill. Comp. Stat. §170/1, including but not limited to: failing to provide the social security number of the borrower, failing to provide the rate of interest or time-price differential, and failing to disclose when such payments are due.

167.    In securing the wage assignment, Defendant Risinger failed to mark the wage assignment instrument by printing the words "Wage Assignment" in bold face letters, not less than 1/4 inch in height at the head of the wage assignment.

168.    In securing the wage assignment, Defendant Risinger failed to mark the wage assignment instrument by printing the words "Wage Assignment" in bold face letters, not less than 1/4 inch in height within one inch of where the borrower could sign the document.

169.    Defendant Risinger failed to provide a separate written wage assignment instrument complete in itself that was not part of some other written instrument.

170.    Defendant Risinger failed to provide a copy of a proper wage assignment to Named Plaintiffs or Class Plaintiffs when Defendant Risinger assigned itself the right to their future wages.

171.    Defendant Risinger failed to follow any of the procedural protections required by the Illinois Wage Assignment Act prior to withholding Named Plaintiffs' and Class Plaintiffs' wages.

172.    Defendant Risinger regularly unlawfully retained more than 15% of the gross amount paid to Named Plaintiffs and Class Plaintiffs pursuant to such wage assignments.

173.    As a result of such conduct, Named Plaintiffs and Class Plaintiffs have been harmed.

**Defendant Risinger's Breach of Contract**
**(Named Plaintiffs and Class Plaintiffs v. Defendant Risinger)**

174.    The foregoing paragraphs are incorporated herein as if set forth in full.

175.    As detailed above, Defendant Risinger regularly failed to pay the compensation owed to Named Plaintiffs and Class Plaintiffs as required by their Agreements.

176.    As a consequence of such breach, Named Plaintiffs and Class Plaintiffs have suffered harm.

**COUNT I**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Failure to Pay Minimum Wage)**
**Named Plaintiffs and Collective Plaintiffs v. Defendants**

177.    The foregoing paragraphs are incorporated herein as if set forth in full.

178.    At all times relevant herein, Defendants were and continue to be "employers" within the meaning of the FLSA.

179.    At all times relevant herein, Named Plaintiffs and Collective Plaintiffs were/are "employees" within the meaning of the FLSA.

180.    The FLSA requires employers, such as Defendants, to minimally compensate employees, such as Named Plaintiffs and Collective Plaintiffs, at the federal minimum wage rate for each hour worked.

181.    As a result of Defendants' company-wide practices and policies of not paying its employees at least the federally mandated minimum wage for all hours worked, Named Plaintiffs and Collective Plaintiffs have been harmed.

182.    Defendant Hoffman is jointly and individually liable for Defendants' failure to compensate Named Plaintiffs and Collective Plaintiffs at least the statutorily mandated federal minimum wage for all hours worked because he, directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the FLSA.

183.    Defendant Stanley K. Risinger is jointly and individually liable for Defendants' failure to compensate Named Plaintiffs and Collective Plaintiffs at least the statutorily mandated federal minimum wage for all hours worked because he, directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the FLSA.

184.    John Does 1-5 are jointly and individually liable for Defendants' failure to compensate Named Plaintiffs and Collective Plaintiffs at least the statutorily mandated federal minimum wage for all hours worked because they directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the FLSA.

185.    John Does 6-10 are jointly and individually liable for Defendants' failure to compensate Named Plaintiffs and Collective Plaintiffs at least the statutorily mandated federal minimum wage for all hours worked because they had control over processing payroll for Named Plaintiffs and Collective Plaintiffs.

186.    Defendants willfully failed/fail to compensate Named Plaintiffs and Collective Plaintiffs the federal minimum wage.

187.    As a result of Defendants' failure to compensate Named Plaintiffs and Collective Plaintiffs at the federal minimum wage rate, Defendants have violated and continue to violate the FLSA.

**COUNT II**
**Violations of the Illinois Wage Payment and Collection Act**
**(Unlawful Deductions)**
**Named Plaintiffs and Class Plaintiffs v. Defendants**

188.    The foregoing paragraphs are incorporated herein as if set forth in full.

189.    At all times relevant herein, Defendants stood in an Employer/Employee relationship with Named Plaintiffs and Class Plaintiffs.

190.    At all times relevant herein, Defendants were responsible for paying wages to Named Plaintiffs and Class Plaintiffs.

191.    Defendants violated the Illinois Wage Payment and Collection Act, by withholding wages for illegal deductions from Named Plaintiffs' and Class Plaintiffs' pay.

192.    Defendant Hoffman is jointly and individually liable for Defendants' unlawful deductions from Named Plaintiffs' and Class Plaintiffs' pay because he directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the Illinois Wage Payment and Collection Act.

193.    Defendant Stanley K. Risinger is jointly and individually liable for Defendants' unlawful deductions from Named Plaintiffs' and Class Plaintiffs' pay, because he directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the Illinois Wage Payment and Collection Act.

194.     John Does 1-5 are jointly and individually liable for Defendants' unlawful deductions from Named Plaintiffs' and Class Plaintiffs' pay because they directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the Illinois Wage Payment and Collection Act.

195.     John Does 6-10 are jointly and individually liable for Defendants' unlawful deductions from Named Plaintiffs and Class Plaintiffs pay, because they directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the Illinois Wage Payment and Collection Act.

196.     Defendants did/do not act in good faith in unlawfully deducting from Named Plaintiffs' and Class Plaintiffs' wages.

197.     As a result of Defendants' conduct, Named Plaintiffs and Class Plaintiffs have suffered damages.

### COUNT III
### Violations of the Truth in Leasing Act
### Named Plaintiffs and Class Plaintiffs v. Defendant Risinger

198.     The foregoing paragraphs are incorporated herein as if set forth in full.

199.     The written leases provided to Named Plaintiffs and Class Plaintiffs violate numerous provisions of the Truth in Leasing Act.

200.     As a result of Defendant Risinger's conduct, Named Plaintiffs and Class Plaintiffs have suffered damages.

### COUNT IV
### Violations of the Illinois Payday Loan Reform Act
### Named Plaintiffs and Payday Loan Plaintiffs v. Defendant Risinger

201.     The foregoing paragraphs are incorporated herein as if set forth in full.

202.     Defendant Risinger's conduct violated numerous provisions of the Illinois Payday Loan Reform Act.

203.     As a consequence of such conduct, the payday loans issued to Named Plaintiffs and Payday Loan Plaintiffs are null and void, and Defendant Risinger is not permitted to retain or collect on any principle, interest, or charges of such loans.

204.     As a result of Defendant Risinger's conduct, Named Plaintiffs and Payday Loan Plaintiffs have suffered damages.

**COUNT V**
**Violations of the Illinois Consumer Fraud and Deceptive Practices Act**
**Named Plaintiffs and Class Plaintiffs v. Defendant Risinger**

205.     The foregoing paragraphs are incorporated herein as if set forth in full.

206.     Defendant Risinger's conduct violated the Illinois Consumer Fraud and Deceptive Practices Act.

207.     As a result of Defendant Risinger's conduct, Named Plaintiffs and Class Plaintiffs have suffered damages.

**COUNT VI**
**Violations of the Common Law**
**Breach of Contract**
**Named Plaintiffs and Class Plaintiffs v. Defendant Risinger**

208.     The foregoing paragraphs are incorporated herein as if set forth in full.

209.     Defendant Risinger breached its contractual obligations to Named Plaintiffs and Class Plaintiffs by failing to pay Named Plaintiffs and Class Plaintiffs consistent with their Agreements.

210.     As a result of Defendant Risinger's conduct, Named Plaintiffs and Class Plaintiffs have suffered damages.

## COUNT VII
### Violations of the Illinois Wage Assignment Act
### Named Plaintiffs and Class Plaintiffs v. Defendant Risinger

211.     The foregoing paragraphs are incorporated herein as if set forth in full.

212.     Defendant Risinger's conduct violated the Illinois Wage Assignment Act.

213.     As a result of Defendant Risinger's conduct, Named Plaintiffs and Class Plaintiffs have suffered damages.

## COUNT VIII
### Violations of the Internal Revenue Code
### Named Plaintiffs and Class Plaintiffs v. Defendant Risinger

214.     The foregoing paragraphs are incorporated herein as if set forth in full.

215.     Throughout their employment with Defendant Risinger, Defendant Risinger purposefully misclassified Named Plaintiffs and Class Plaintiffs as independent contractors for tax purposes.

216.     Defendant Risinger willfully filed fraudulent information returns with respect to payments purported to be made to Named Plaintiffs and Class Plaintiffs.

217.     Defendant Risinger's conduct violated the Internal Revenue Code, 26 U.S.C. § 7434.

218.     As a result of Defendant Risinger's unlawful conduct, Named Plaintiffs and Class Plaintiffs have been harmed.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order providing that:

(1)     Defendants are to be prohibited from continuing to maintain their policies, practices or customs in violation of federal and state laws and principles of equity;

(2)     Defendants are to compensate, reimburse, and make Named Plaintiffs, Collective and Class Plaintiffs whole for any and all pay and benefits they would have received had it not

been for Defendants' illegal actions, including but not limited to past lost earnings.   Named Plaintiffs, Collective and Class Plaintiffs should be accorded those benefits illegally withheld;

(3)     Named Plaintiffs, Collective and Class Plaintiffs are to be awarded liquidated damages  as applicable under the laws they are suing in an amount equal to the actual damages in this case;

(4)     Named Plaintiffs, Class Plaintiffs, and Payday Loan Plaintiffs are to be awarded punitive damages for Defendants' willful and egregious conduct;

(5)     Named Plaintiffs, Collective, and Class Plaintiffs are to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable law;

(6)     Named Plaintiffs, Collective, and Class Plaintiffs are to be awarded equitable relief, including disgorgement of profits and other relief deemed appropriate by the Court;

(7)     Any and all other equitable relief which this Court deems fit.

Respectfully Submitted,

*s/ Justin L. Swidler*
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

Date: August 9, 2016

## DEMAND TO PRESERVE EVIDENCE

All Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Named Plaintiffs', Collective Plaintiffs, and Class Plaintiffs' employment and/or contractual relationship with Defendants, to Named Plaintiffs', Collective Plaintiffs, and Class Plaintiffs' cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, Defendants' marketing materials (including its website, and all website pages referenced in this Complaint), orientation materials, complaints made by any driver regarding pay, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, Qualcomm messages, spreadsheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Respectfully Submitted,

*s/ Justin L. Swidler*
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

Date: August 9, 2016

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury of all causes of action set forth in this Complaint that provide Plaintiffs a right to a trial by jury.

Respectfully Submitted,

*s/ Justin L. Swidler*_____
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

Date: August 9, 2016

## DESIGNATION OF TRIAL COUNSEL

Justin L. Swidler, Esquire, of the law firm Swartz Swidler, LLC, is hereby designated trial counsel.

Respectfully Submitted,

*s/ Justin L. Swidler*_____
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

Date: August 9, 2016