**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| DEBBIE DEROLF, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  16-cv-1298 |
| | ) | |
| RISINGER BROS. TRANSFER, INC., *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

This matter is before the Court on the Defendants' Motion To Dismiss The Amended Complaint Pursuant To Federal Rule Of Civil Procedure 12(B)(6) (Doc. 22). The motion has been fully briefed and is ready for decision. For the reasons stated below, the motion is GRANTED in part.

## BACKGROUND

Plaintiffs Debbie Derolf and Kevin Anderson were truck drivers who hauled freight for Defendant Risinger Bros. Transfer, Inc. (referred to as "Defendant Risinger"). Defendant Stanley K. Risinger is the Chairman of the Board of Directors of Defendant Risinger. Defendant Dean Hoffman is the President of Defendant Risinger. The Amended Complaint also names several John Doe Defendants as presently unknown persons who are alleged to have either directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices of Defendants or processed payroll regarding the Plaintiffs.

1

First, Plaintiffs allege that Defendants falsely designated them and others similarly situated to them as independent contractors instead of employees and unlawfully deducted from and withheld portions of the wages owed to them in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Second, Plaintiffs allege that they and others similarly situated to them entered into lease agreements with Defendant Risinger that violate the Truth in Leasing Act, 49 U.S.C. § 14704 by not including certain terms in the leases and by including certain terms that actually violate the law. Third, Plaintiffs allege that Defendants have violated the Internal Revenue Code, 26 U.S.C. § 7434, by purposefully misclassifying Plaintiffs and others similarly situated to them as independent contractors and willfully filing fraudulent information returns. Lastly, Plaintiffs also bring several Illinois and Indiana state law claims that will not be discussed because the Court has determined that the federal claims should be dismissed.

## LEGAL STANDARDS

In ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the challenged pleading must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the [non-movant] has a right to relief, raising that possibility above a 'speculative level.' " *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts "to present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. Lastly, when a plaintiff pleads facts demonstrating that he has no claim, dismissal of the complaint is proper. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

## DISCUSSION

### I.    FLSA Claims

Plaintiffs allege that they and others similarly situated to them are employees of Defendant Risinger but that Defendant Risinger failed to pay them statutorily-required minimum wages as well as unlawfully deducted from and withheld portions of their wages by deliberately misclassifying them as independent contractors. Defendants counter that the contracts the Plaintiffs and others entered into with Defendant Risinger conclusively establish that the Plaintiffs and others were independent contractors and thus, Plaintiffs' FLSA requirements are simply not applicable.

The FLSA requires certain employers to pay its employees certain minimum wages. 29 U.S.C. § 206. "Employer" is defined under the Act to be "any person acting directly or indirectly in the interest of an employer in relation to an employee…." 29 U.S.C. § 203(d). An "employee" is any individual employed by an employer. 29 U.S.C. § 203(e)(1). The term "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA only applies when there is an employer-employee relationship; it does not

apply when there is a contractor-independent contractor relationship. *See Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961) (Whittaker, J., dissenting) ("It is clear and undisputed that the Fair Labor Standards Act does not apply in the absence of an employer-employee relationship.")

Whether a plaintiff is an employee or independent contractor is a question that is amenable to a Rule 12(b)(6) analysis even though it is fact-intensive. *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 294 (7th Cir. 2016). A proper claim under the FLSA must allege facts that make it plausible the workers at issue are employees covered by the Act. It is not sufficient to simply say one is an employee; indeed, mere labels and formulaic language are not enough to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a "formulaic recitation of the elements of a cause of action will not do."). The Seventh Circuit utilizes an "economic reality" standard to evaluate whether workers under consideration are actual employees or independent contractors. *Sec'y of Labor, U.S. Dept. of Labor v. Lauritzen*, 835 F.2d 1529, 1534-35 (7th Cir. 1987). Under this standard, courts in this jurisdiction look for allegations indicating that the following factors weigh in favor of the Plaintiff: (1) the employer's control over the manner in which the alleged employee performs the work, (2) the alleged employee's opportunity for profit or loss depending upon his or her skill, (3) the alleged employee's investment in equipment or materials or employment of workers, (4) whether the work requires a special skill, (5) the permanency and duration of the relationship, and (6) the extent to which the work is an "integral part" of the alleged employer's business. *Id.* Courts are to look at these factors in a totality of the

circumstances fashion; "no criterion is by itself, or by its absence, [is] dispositive or controlling. *Id.* at 1534.

## A. The Employer's Control Over The Manner In Which The Alleged Employee Performs The Work

The Operating Agreements ("OAs"), which are the contracts and leases between Defendant Risinger and the Plaintiffs, provide ample evidence that the Plaintiffs exercised vast control over the ways in which they performed their work.[1] The OAs refer to Defendant Risinger as the Carrier. The "work" at issue was transporting goods for Risinger by driving trucks. The OAs make clear that the Plaintiffs, known under the OAs as the "Contractors", did not even have to engage in the "work" themselves, they could hire their own drivers to do so. (*See e.g.*, Doc. 23-1 at 7, 10). In such case, it was the Plaintiffs and those similarly situated to them who bore the responsibility "for the selection, training, hiring, setting of grooming and dress standards, disciplining, discharging, setting of hours, meal and rest breaks, wages, and salaries, providing for unemployment insurance, state and federal taxes, fringe benefits, workers' compensation insurance (or, if Contractor prefers, occupational accident insurance where both state law allows and Carrier approves), adjustment of grievances, all acts and omissions, and all other matters relating to or arising out of Contractor's use or employment of drivers, drivers' helpers, and other

---

[1] The OAs were provided by Defendants as an attachment to their motion to dismiss. (Docs. 23-1, 23-2). Normally, a motion to dismiss is decided solely on the allegations of the operative complaint, but a notable exception to this rule, which applies here, is when the operative complaint refers to documents that are so central to the claims, courts can consider them if they accompany the motion to dismiss. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

personnel to perform any aspect of this Agreement." (*E.g.*, Doc. 23-1 at 18). Moreover, the OAs provide that it is the Contractor's sole responsibility "to select, purchase or lease, and finance the Equipment; to decide when, where, and how maintenance and repairs are to be performed on the Equipment; and to select all routes and decide all meal, rest, and refueling stops, provided that to meet Carrier's customers' demands." (*E.g.*, Doc. 23-1 at 18). This all indicates that Plaintiffs were not employees. The Court is unaware of any instances where an employee can contract with a third party to perform the actual work of the employer.

Plaintiff alleges that Defendant Risinger required Plaintiffs and others similarly situated to them to attend an orientation, which lasted several days. During this orientation, Defendant Risinger required Plaintiffs and others to watch presentations and videos regarding the rules and policies of Defendant Risinger, take a drug test, undergo a medical, physical, and take a road test. The Amended Complaint is silent as to whether the Plaintiffs and those similarly situated were compensated for the time they spent during such orientations. Obviously, if they were compensated for their attendance that would be a factor weighing towards finding the relationship to be one of employer-employee. But absent such pleading, the Court is left with the understanding that undergoing driving and skill tests at an orientation is not, in and of itself, indicative of an employer-employee relationship. *See Nance v. May Trucking Company*, No. 14-35640, 2017 WL 1164403, at *1 (9th Cir. Mar. 29, 2017).

Plaintiffs also allege that they and others similarly situated to them were not permitted by the OAs with Defendant Risinger, to use the commercial vehicles leased

to them by Defendant Risinger, for any carrier other than Defendant Risinger <u>unless</u> Defendant Risinger gave prior written consent. Plaintiffs go on to allege that absent written permission from Defendant Risinger, Plaintiffs and others similarly situated to them could accept only jobs that were assigned to them by Defendant Risinger from the Risinger freight system. (Doc. 13 at 14-15). That may very well be, but the Court does not think these points are of much significance.

The Court is unaware of any traditional employer-employee relationship where an employer would ever allow an employee to use the employer's equipment for a competitor under any circumstances. The OAs provide that the Equipment, the commercial motor vehicle, is being leased to the Plaintiffs as part of the agreement to provide for the hauling of the goods in exchange for no down payment and no advance credit requirements. (*E.g.*, Doc 23-1 at 43). The fact that the Equipment can be used by the Plaintiffs to haul freight for other carriers is a clear indication that they are not the Defendant Risinger's employees. There is no allegation in the Amended Complaint that Defendants did not give such permission or that the Plaintiffs or others ever even asked for such permission.

Plaintiffs allege further that in the event that Plaintiffs and others similarly situated to them stopped hauling the majority of their freight for Defendant Risinger, Defendant Risinger required them to pay Defendant Risinger a lump sum of $24,000 within seven days of a written demand and notification from Defendant Risinger. (Doc. 13 at 14-15). Again, this point is not of much consequence. That lump sum represents a value the Defendant Risinger contracted for to cover its risk of extending the equipment to a party that provided no down payment and no advance credit

requirements for hauling freight primarily for other carriers, other carriers being Defendant Risinger's competitors of course. This payment is directly tied to the fact that the Plaintiffs are free to perform the work of hauling freight for others—they simply have to pay a premium if they choose to primarily haul for other carriers—and thus, it supports the conclusion that they are independent contractors and not employees.

Lastly, Plaintiffs allege that Defendant Risinger assigned Plaintiffs and others similarly situated to them, "driver managers" who acted as their supervisors throughout their employment. At all times, Defendant Risinger directed, provided, and supervised the work performed by Plaintiffs on Defendant Risinger's behalf. These allegations clearly weigh in favor of a finding that the *drivers* may have been employees. However, once again, the OAs clearly provide that the Contractors need not be the actual people driving the trucks, thus the Court finds that the allegations do not counsel towards concluding the Defendant Risinger exercised the requisite amount of control over the Contractors to make it plausible that the Plaintiffs—the Contractors in the OAs—were employees rather than independent contractors.

Consequently, the Court finds that Defendant Risinger's control over the manner in which the Plaintiffs performed the work of hauling freight does not weigh in favor of concluding Plaintiffs were employees.

### B. The Alleged Employee's Opportunity For Profit Or Loss Depending Upon His Or Her Skill

The Plaintiffs allege neither they nor others similarly situated to them had a meaningful opportunity to increase their revenues by recruiting new customers, as

they were not permitted to recruit new customers as a consequence of being permitted to accept only loads assigned to them from Defendant Risinger. The Court does not understand this allegation. The OAs unambiguously permit contractors to haul freight for other carriers after securing permission, and to accept or decline any specific delivery for Risinger. (E.g., Doc. 23-1 at 22). So there does not appear to be any restriction on the Plaintiffs ability to engage "new customers," which the Court takes to mean other carriers. If this is incorrect and the Plaintiffs mean that they were denied the opportunity to recruit new customers—people or entities that have goods they wish to be hauled—for Risinger, then the Court is at a loss to understand how they can simultaneously argue that their "work" consisted of driving trucks for Risinger.

Recruiting new customers does not seem to be something within the tasks of a mere driver. Such "work" would obviously entail identifying customers, soliciting their business and engaging in salesmanship, which entails much more than simply driving trucks for an alleged master. Moreover, there does not appear to be any mention of how Risinger was to compensate Plaintiffs and others for bringing Risinger new customers.

The whole crux of the Plaintiffs' Amended Complaint is that they allege that they were driving trucks containing freight to be delivered to Risinger's customers and they had little discretion on how this work was to be done. But the Plaintiffs' profits depended on how much hauling they accomplished, which was something completely within their own control, subject to limitations on driving contained in federal regulations.

9

Plaintiffs and others similarly situated to them also allege that they were paid a flat cents-per-mile rate, which was not subject to negotiation based on the individual loads assigned to Plaintiffs. This point does not persuade the Court because again, the OAs permitted the contractors to haul freight for other carriers. One would presume, although no allegation has been made in the Amended Complaint, that other carriers had their own rates of compensation. Since Plaintiffs were free to do business with these other carriers, it does not follow that their inability to negotiate rates with Risinger would necessarily foreclose their profitability.

Additionally, Plaintiffs allege that Defendants retained the right to unilaterally change Named Plaintiffs', Collective Plaintiffs', and Class Plaintiffs' compensation structure by changing the fuel surcharge, the amount of the non-refundable maintenance escrow deductions, and the amount of the base compensation. Consequently, Plaintiffs and others *could do little to increase their profitability* other than attempt to improve their fuel efficiency. This is not supported by the freedoms Plaintiffs had under the OAs. Again, Plaintiffs' profits depended on how much hauling of freight they did; something they controlled. To ignore that their profitability hinged on how much they drove—as opposed to fuel efficiency—would be to ignore the reality of their business. This factor also weighs in favor of Defendants.

## C. The Alleged Employee's Investment In Equipment Or Materials Or Employment Of Workers

The Court is of the opinion that this factor also weighs in favor of Defendants. First of all, as discussed above, the Plaintiffs and other similarly situated to them are

fully empowered under the OAs to hire their own drivers, driver's assistants, and so on. The Plaintiffs are required to lease the trucks from Risinger as contractors; they are not simply given the trucks to complete their work. The whole set up may be unfair but there is little question that the system requires the Plaintiffs to take a huge risk and invest in their own ability to arrange for as much freight to be hauled so as to turn a profit.

In traditional employer-employee settings, employees are not asked to take such risk upon themselves to ensure compensation. Instead, they know that by doing a specific set of tasks for a given amount of time, they can expect certain remuneration. That is not the case here. Here, the so-called "Base Compensation" depends on the mileage the Contractor accumulates hauling the freight. (E.g., Doc. 23-1 at 34). That mileage is controlled by how much the Contractor or her drivers drive. How much mileage is driven, what trips are accepted, what routes are taken, and when the driving occurs are all variables controlled by the Plaintiffs not Defendant Risinger.

### D.      Whether The Work Requires A Special Skill

The Court did not find allegations in the Amended Complaint pertaining to this factor. Nevertheless, in a case unrelated to concerns under the FLSA, the Seventh Circuit explained that driving commercial trucks was a special skill. *United States v. Lewis*, 41 F.3d 1209, 1214 (7th Cir. 1994). However, driving the truck in and of itself is not the only skill at issue here. Plaintiffs clearly need to possess business acumen, diligence, and managerial skills as they are much more like businesspeople rather than merely drivers, even though they may drive the trucks themselves. They

control what hauls they accept. They control what routes they take. They control when they work. The Court finds this factor weighs in favor of Defendants.

### E.    The Permanency And Duration Of The Relationship

This factor also weighs in favor of Defendants. Temporary relationships suggest independent contractor status while open-ended relationships suggest employee status. *Lauritzen*, 835 F.2d at 1537. While the Court could not find a termination date within the OAs, the actual Lease Agreements clearly state fixed terms for the leases of the trucks to operate. (*See* Doc. 23-1 at 41, 23-2 at 41). So, unlike in *Doe v. Swift Transp. Co.*, 2017 U.S. Dist. LEXIS 2410 (D. Ariz. Jan. 5, 2017), where the court found that the agreements at issue did not contemplate an end to the service relationship, *id.* at *14, here there is a fixed termination of the Lease Agreements in place.

### F.    The Extent To Which The Work Is An "Integral Part" Of The Alleged Employer's Business

The Court finds that this factor weighs heavily in favor of the Plaintiffs. It cannot be argued seriously that the hauling of freight is not an integral part of Defendants' business. Without the Plaintiffs and others similarly-situated, the Defendants' business model could hardly exist.

### G.    Dependence Of The Plaintiff's And Others On Defendant Risinger

The Plaintiffs make a bald allegation that they are economically dependent upon Defendant Risinger. In *Lauritzen*, the Seventh Circuit concluded that migrant workers on a pickle farm were the employees of the pickle farm because they were wholly dependent on the defendant's land, crops, agricultural expertise, equipment,

and marketing skills. 835 F.2d 1529. There is no indication in the pleadings beyond Plaintiff's bald allegation that they are as dependent upon Risinger as the migrant workers in *Lauritzen* were dependent on the pickle farm.

For example, there is no allegation in the Amended Complaint that Risinger is the only carrier available. Indeed, the OAs specifically mention that other carriers exists and under certain conditions the Plaintiffs and others similarly situated to them can haul freight for such other carriers with the trucks leased to them by Risinger.

## H.    Conclusion

In conclusion, this Court finds that the allegations of the Amended Complaint fail to state a claim for which relief can be granted when viewed in conjunction with the OAs. The Plaintiffs and others operating under the OAs were independent contractors, not employees. Plaintiffs exercised more control on how they worked than traditional employees. They were responsible for their own profitability in a way that suggested they were entrepreneurs, not simply truck drivers. They were required to make significant investment in their own equipment. The leases they operated under had fixed termination dates. Lastly, there was no indication that they were dependent on Risinger exclusively, since the OAs clearly contemplated the existence of other carriers.  The one factor that weighed heavily for Plaintiffs was the fact that they are an integral part of Risinger's business, but the Court finds this factor does not outweigh the several others. Therefore, the FLSA claims should be dismissed by way of the Defendants' 12(b)(6) motion.

## II.    IRS Section 7434 Claims

Plaintiffs allege that Defendant Risinger violated 26 U.S.C. § 7434 by purposefully misclassifying Plaintiffs and those similarly situated to them as independent contractors and issuing them 1099 tax information returns instead of W-2 tax information returns. In so doing, Risinger allegedly willfully filed fraudulent information returns with respect to payments purported to be made to Plaintiffs and those similarly situated. As the Court has found the Plaintiffs and others similarly situated to them were independent contractors, no misclassification occurred as Risinger was correct to file Form 1099 information returns.

Regardless, the Court also finds these claims are not cognizable as pled. Section 7434 provides in relevant part that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). Thus, clearly § 7434 provides a private right of action to aggrieved persons.

However, there appears to be a split amongst the district courts, and no authoritative precedent as to whether the nature of the fraud pertains solely to the pecuniary value of the payments at issue or whether the scope of the fraud encompasses broader concepts. Indeed, the Plaintiffs seem to be arguing that whenever someone can be identified as harmed by the purposeful filing of an information return that is fraudulent in any respect, such a harmed individual may bring an action under § 7434. (*See* Doc. 27 at 19-20). Plaintiffs cite three cases in support of their proposition; *Leon v. Tapas & Tintos, Inc.*, 51 F.Supp.3d 1290, 1298

(S.D. Fla. 2014); *Bolling v. PP&G Inc.*, No. WDQ-15-911, 2015 WL 9255330, at *6–7 (D. Md. Dec. 17, 2015); and *Diaz v. In Season Distributors, LLC*, No. 1:16-CV-21877-UU, 2016 WL 4401141, at *1–2 (S.D. Fla. Aug. 17, 2016). The Court finds none of these cases analyzed the specific issue of whether § 7434 only targets fraud pertaining solely to the pecuniary value of the payments referenced in the information returns. Consequently, those cases are of little use to the Court as opposed to the case cited by Defendants, *Liverett v. Torres Advanced Enter. Sols. LLC*, 192 F. Supp. 3d 648 (E.D. Va. 2016), where the court discussed at length whether § 7434 creates a private cause of action for tax fraud where an alleged misrepresentation giving rise to the action is unrelated to the amount of payments. *Id.* at 649.

In *Liverett*, the Court analyzed the text of the statute and Congressional intent and concluded that "§ 7434(a) creates a private cause of action only where an information return is fraudulent with respect to the amount purportedly paid to the plaintiff." 192 F. Supp. 3d at 653. A much more recent case out of the Middle District of Florida agreed with the *Liverett* court after analyzing the issue in even greater detail. *Tran v. Tran*, No. 8:16-CV-1356-T-23AEP, 2017 WL 894370, at *1 (M.D. Fla. Mar. 7, 2017) ("liability under Section 7434 requires a misstatement of the amount of payment"). This Court agrees with the *Liverett* and *Tran* courts and finds that the Plaintiff's claims do not state plausible violations of § 7434.

The *Liverett* court clarified the purported ambiguity of § 7434 with respect to the facts of that case, which also apply equally here: "a Form 1099 that identifies plaintiff as an independent contractor when he is in fact an employee is an information return that is false with respect to plaintiff's employment status, but so

15

long as the Form 1099 accurately reports the amount of wages defendant paid to plaintiff, the return is not fraudulent with respect to the amount of the payments made." 192 F. Supp. 3d at 650. This is supported from the clear language of the statute, which states that a person is prohibited from willfully filing "a fraudulent information return *with respect to payments purported to be made* to any other person…." 26 U.S.C.A. § 7434(a). Furthermore, the statute provides that an "information return" is "any statement described in section 6724(d)(1)(A)." 26 U.S.C. § 7434(f). Section 6724(d)(1)(A) then provides a definition of the term "information return," which is "any statement of the *amount of payments* to another person required by" any of ten provisions of law. 26 U.S.C. § 6724(d)(1)(A); *Liverett*, 192 F. Supp. 3d at 652. Therefore, a proper § 7434 violation must be predicated on a purported misstatement of amount.

The *Liverett* court also explained that § 7434(e) provides meaningful context to lead a court to interpret § 7434's private right of action to only extend to instances where an operative complaint alleges that the amounts of the payments at issue in information returns under consideration are fraudulent. *Id.* at 653. That provision requires that the "decision of the court awarding damages in an action brought under subsection (a) shall include a finding of the correct amount which should have been reported in the information return." 26 U.S.C. § 7434(e); 192 F. Supp. 3d at 653. If the relief contemplated under the statute is limited to the amount of money that should have been documented on the information return, then as a matter of logic the right of action is similarly limited to alleged false statements of the amounts earned

and documented on the information return. Consequently, this claim fails as a matter of law and the claims must be dismissed.

## III.    TILA Claims

Plaintiffs allege that Defendants violated the federal Truth in Leasing Act, 49 U.S.C. §14704, *et. seq.* and its accompanying regulations because the OAs do not purportedly conform to requirements set out in those laws and regulations. First, Plaintiffs allege that the OAs violate 49 C.F.R. § 376.12(a) because the Plaintiffs were not "owners" of the equipment as that term is defined by the regulations at the time the OAs were signed. Next, Plaintiffs allege that several of the provisions of the OA are designed to impermissibly limit Defendant Risinger's legal obligations under 49 C.F.R. § 376.12 or to impose conditions that are prohibited by that regulation. Next, the Plaintiffs allege that the OAs lack certain provisions that are required by 49 C.F.R. § 376.12.

These claims will be dismissed because Plaintiffs do not plead that they have suffered any actual damages from the alleged TILA violations. As was recognized in *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, "[a] carrier 'is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation [of the regulations].'" 622 F.3d 1307, 1325 (11th Cir. 2010) (citing 49 U.S.C. § 14704(a)(2). The Court interprets 49 U.S.C. § 14704(a)(2) to confer upon TILA plaintiffs a pleading requirement to plausibly allege that they were injured, *i.e.* they were financially harmed, because of defendants' failures to adhere to the TILA regulations.

The only allegations that plausibly link real damages—financial harm—to the alleged acts of Defendant Risinger are those concerning the underpayment for miles driven. Plaintiffs allege that the OAs state that Plaintiffs would be paid a flat mileage rate "for all loaded and dispatched empty miles operated under [Defendant Risinger] dispatch (as specifically directed or authorized by [Defendant Risinger] based on [Defendant Risinger's] most current . . . version of Rand McNally computerized mileage guide…", but does not inform the driver that Defendant Risinger's Rand McNally computerized mileage guide has different settings that Defendant Risinger is able to control, allowing Defendant Risinger to determine Named Plaintiffs and Class Plaintiffs' compensation. (Doc. 13 at 29). Defendant Risinger's version of the Rand McNally guide consistently yielded smaller distances than a publicly available mileage calculator that Plaintiffs have used. For example, on one occasion, Plaintiff Derolf hauled a load from Harvey, IL to Allen Park, MI. Defendant Risinger calculated the distance to be 253 miles, whereas the publicly available Rand McNally guide calculated the distance to be 259.8 miles. Risinger's use of the smaller number multiplied by the flat rate yielded less compensation remunerated to Plaintiff Derolf than what she was actually entitled. Plaintiffs allege that this scenario played out with the Named Plaintiffs for many of their hauls, as well as those of other drivers similarly situated to them. Clearly then, these allegations set out a plausible scenario in which the Plaintiffs, and others similarly situated, are being systematically undercompensated due to the smaller distance inputs.

However, the cause of this under-compensation is not attributable to any alleged deficiency in the transparency of the lease terms, but rather to the alleged

inputting of incorrect distance amounts into the compensation calculation. The lease unambiguously states that compensation will be calculated based on Risinger's <u>most current version of the Rand McNally computerized mileage guide</u>. (E.g., Doc. 23-1 at 34 (emphasis added)). It says nothing about utilizing the publicly available Rand McNally mileage calculator. Nor does the Amended Complaint allege that Risinger failed to use *its* most current version of the Rand McNally computerized mileage guide in deciding what distances to use. If anything then, as pled in the Amended Complaint this under-compensation is the result of Risinger's breach of a duty of good faith and fair dealing attributable to all parties to all contracts, *see*, *e.g.*, *Chartrand Equipment Co. v. Admiral Ins. Co.*, 609 F.Supp. 810 (S.D.Ill. 1985), not from alleged violations of TILA in respect to ambiguous or absent lease terms. These claims are dismissed for failing to set out plausible claims that the Plaintiffs or others were harmed due to the alleged TILA violations.

## CONCLUSION

For the foregoing reasons, Defendants' Motion To Dismiss The Amended Complaint Pursuant To Federal Rule Of Civil Procedure 12(B)(6) (Doc. 22) is GRANTED in part and Plaintiff's federal claims are dismissed. Although the Court is skeptical that Plaintiffs will be able to plead viable federal claims under the theories presented, the Court will nonetheless allow Plaintiffs to move the Court for leave to file an amended complaint within twenty-one (21) days. An amended complaint shall be attached to the motion as an exhibit. Defendants shall have an opportunity to respond and the Court will assess whether the amended complaint will be allowed or whether such amendment would be futile.

Jurisdiction over this matter was invoked by the Court's federal-question jurisdiction under 28 U.S.C. § 1331 and its supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. Having disposed of the federal claims, the Court hereby declines to exercise supplemental jurisdiction over the remaining state law claims and therefore passes no judgment on their viability. If Plaintiff fails to file for leave to file an amended complaint in the time allotted, the federal claims will be dismissed with prejudice and the action terminated. SO ORDERED.

Entered this 21st day of April, 2017.


                                                s/ Joe B. McDade
                                               JOE BILLY McDADE

                                     United States Senior District Judge